**Beverly A. TROY, d/b/a Bev's Fillin' Station, Plaintiff and Cross-Defendant,**

v.

**SHELL OIL COMPANY, a Delaware corporation, Defendant and Cross-Plaintiff.**

**Civ. A. No. 4–71662.**

United States District Court,
E. D. Michigan, S. D.

June 10, 1974.

James D. Wines, Royal Oak, Mich., for plaintiff.

Clarence J. Boldt, Jr., Birmingham, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Plaintiff Beverly Troy is the lessee and operator of a service station owned by defendant Shell Oil Company. On April 26, 1974, she was informed that her yearly lease, which expires on May 31, 1974, will not be renewed. She subsequently filed this complaint, alleging that she was an employee of Shell within the meaning of 42 U.S.C. § 2000e(f), and was being terminated because of her sex, in violation of 42 U.S.C. § 2000e–2 (a)(1).

Upon petition of the plaintiff an order was entered directing Shell to show cause why a preliminary injunction should not issue preventing Shell from terminating its relationship with Ms. Troy during the pendency of this case. The initial hearing on this matter was adjourned for the purpose of permitting plaintiff to file a complaint with the EEOC and seek its assistance in obtaining preliminary relief. A supplemental pleading was then submitted, stating that plaintiff had filed a complaint

against Shell with the EEOC, that the Commission had a large backlog of cases and apparently could not or would not act on plaintiff's complaint with the necessary dispatch, and reiterating that plaintiff would be irreparably harmed unless this court acted forthwith to preserve the status quo pending decision on the merits. There was also an attempt to amend the original complaint to assert a claim under 42 U.S.C. § 1981. Argument was then heard on the original order to show cause. This opinion supplements the record of that proceeding.

■■ The lower federal courts are courts of limited jurisdiction. "[A]lthough theories as to inherent jurisdiction, jurisdictional fact, due process, separation of powers, and related doctrines may constitute peripheral qualifications upon the otherwise unlimited power of Congress to withdraw, curtail or in some other manner qualify a jurisdictional grant", it is generally true that federal courts have only such powers as are expressly or implicitly granted them by Congress and must exercise them in the manner and under the conditions prescribed. 1 J. Moore, Federal Practice ¶ 0.60 [2] at 605 (2d ed. 1974).

"[T]he judicial power of the United States, although it has its origin in the Constitution, is (except in enumerated instances, applicable exclusively to [the Supreme Court]), dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action of Congress, who possess the sole power of creating the tribunals (inferior to the Supreme Court), for the exercise of the judicial power, and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good. . . . It follows, then, that the courts created by statute, must look to the statute as the warrant for their authority; certainly they cannot go beyond the statute, and as-

sert an authority with which they may not be invested by it, or which may be clearly denied to them." Cary v. Curtis, 44 U.S. (3 How.) 236, 245, 11 L.Ed. 576 (1845).

Where a statute contains explicit enforcement provisions, those procedures are ordinarily exclusive. See e. g., Whitney National Bank v. Bank of New Orleans, 379 U.S. 411, 420, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965). When the power to act initially is given exclusively to an administrative agency, "[t]he District Court is without jurisdiction" to grant relief "for a supposed or threatened injury until the prescribed administrative remedy has been exhausted". Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 48, 50–51, 58 S.Ct. 459, 462, 82 L.Ed. 638 (1938).

"On a few occasions courts have been willing to exercise their equity powers to provide additional avenues of review despite the apparent exclusivity of the statutory procedures. Such exceptions, however, have usually been limited to situations in which the statutory review procedure is inadequate. Columbia Broadcasting System v. United States, 1942, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 . . . . Or they have been limited to cases in which the agency has exceeded its statutory or constitutional authority. Leedom v. Kyne, 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 . . . ." Fort Worth Nat'l Corp. v. Federal Savings & Loan Ins. Corp., 469 F.2d 47, 52 (5th Cir. 1972).

See generally 3 K. Davis, Administrative Law Treatise §§ 20.01–.10 (1958 ed., 1970 Supp.).

■ Congress has established certain administrative procedures and remedies for persons claiming to be aggrieved by discriminatory employment practices violative of Title VII of the Civil Rights Act of 1964. See 42 U.S.C. § 2000e–5. The courts have generally held that "[c]ompliance with the statutory requirements is a prerequisite to the institution of a civil action based on

the statute". Goodman v. City Products Corp., 425 F.2d 702, 704 (6th Cir. 1970). Of course this principle of exhaustion, which was recognized and approved by the Supreme Court in Love v. Pullman Co., 404 U.S. 522, 523, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), is not indiscriminately applied to every administrative procedure specified in the statute, nor is it without its limited exceptions. For example, the EEOC's failure to investigate or attempt conciliation, as required by 42 U.S.C. § 2000e–5(b), will not preclude court action. *See, e. g.,* Danner v. Phillips Petroleum Co., 447 F.2d 159, 161 (5th Cir. 1971); Johnson v. Seaboard Air Line R. R., 405 F.2d 645, 648–649 (4th Cir. 1968), cert. denied, Pilot Freight Carriers, Inc. v. Walker, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969). In a class action, all members of the class need not have filed charges with the EEOC or received suit letters if at least one of them has. Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir. 1968); Leisner v. New York Tel. Co., 358 F.Supp. 359, 374 (S.D.N.Y.1973). The time limits prescribed for certain actions may not be strictly enforced in certain circumstances. *See, e. g.,* Henderson v. Eastern Freight Ways, Inc., 460 F.2d 258, 260 (4th Cir. 1972); Aros v. McDonnell Douglas Corp., 348 F.Supp. 661, 663 (C. D.Cal.1972). A plaintiff may even avoid administrative procedures entirely if it is clear that resort to them would be futile. De Figueirdo v. TWA, Inc., 322 F.Supp. 1384 (S.D.N.Y.1971). *Cf.* Glover v. St. Louis-S. F. Ry., 393 U.S. 324, 330, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).

Normally, however, the Commission cannot be bypassed entirely, and must at least be given the opportunity to act. Fekete v. U. S. Steel Corp., 424 F.2d 331, 336 (3d Cir. 1970); Johnson v. Seaboard Air Line R. R., 405 F.2d 645, 652 (4th Cir. 1968), cert. denied. Pilot Freight Carriers, Inc. v. Walker, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969); Stebbins v. Nationwide Mut. Ins. Co., 382 F.2d 267, 268 (4th

Cir. 1967), cert. denied, 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968). In order to fulfill this mandate, most courts have enforced two jurisdictional prerequisites: (1) the filing of a charge with the EEOC and (2) receipt of a notice from the EEOC of the right to sue. *See, e. g.,* Local 179, United Textile Workers v. Federal Paper Stock Co., 461 F.2d 849, 850–851 (8th Cir. 1972); Jefferson v. Peerless Pumps Hydrodynamic, 456 F.2d 1359, 1361 (9th Cir. 1972); Stebbins v. Continental Ins. Cos., 143 U.S.App.D.C. 121, 442 F.2d 843, 845–846 (1971); Beverly v. Lone Star Lead Constr. Corp., 437 F.2d 1136, 1139–1140 (5th Cir. 1971); Dent v. St. Louis-S. F. R. R., 406 F.2d 399, 403 (5th Cir. 1969). Most courts have also required that the original charges before the EEOC and any subsequent lawsuit have been timely filed. *See, e. g.,* Moore v. Sunbeam Corp., 459 F.2d 811, 821 n. 26 (7th Cir. 1972); Goodman v. City Products Corp., 425 F.2d 702, 703–704 (6th Cir. 1970).

Although Troy has now filed charges with the EEOC, thus satisfying the first condition, she has not received, nor is she yet entitled to receive, a notice of right to sue. The statute specifies that notice is to be given, and the aggrieved party may institute court action, only (1) if the Commission has dismissed the charge (which it may not do without first conducting an investigation—*see* 42 U.S.C. § 2000e–5(b)—though this requirement is not "jurisdictional" in the sense that the dismissal itself would be), or (2) if 180 days have elapsed from the filing of the charge or the expiration of any period of reference to a state agency pursuant to § 2000e–5(c) or (d) without the Commission having filed a complaint or entered into a conciliation agreement to which the aggrieved person is a party. 42 U.S.C. § 2000e–5(f)(1). Because the Commission has not had a full opportunity to act on plaintiff's grievance, as defined by the above statutory conditions, this court would ordinarily be without jurisdiction to entertain plaintiff's complaint or grant relief of any

kind. The question now raised is whether this result is somehow altered by the fact that she presently seeks only preliminary injunctive relief, designed to preserve the status quo pending action by the EEOC.

At least two courts have held that preliminary injunctive relief is available notwithstanding the plaintiff's failure to exhaust administrative remedies. In Bowe v. Colgate-Palmolive Co., 272 F. Supp. 332, 338 (S.D.Ind.1967), aff'd in part and rev'd in part on other grounds, 416 F.2d 711 (7th Cir. 1969), the district court held that:

> "It would be unrealistic to require an employee whose rights are threatened with irreparable harm to exhaust his remedies before the EEOC prior to seeking injunctive relief from the Court."

However, it held that resort to the EEOC was a jurisdictional prerequisite to maintenance of a suit for damages or reinstatement, and the claims of the plaintiffs who had not exhausted their remedies were therefore not considered on the merits. This issue was not discussed on appeal, apparently because the Court of Appeals ruled that the case should have been maintained as a class action, thus making all forms of relief equally available to all members of the class, regardless of exhaustion in individual cases.

In Drew v. Liberty Mut. Ins. Co., 480 F.2d 69 (5th Cir. 1973), the court held that where

> "irreparable injury is shown and likelihood of ultimate success has been established, . . . the individual employee may bring her own suit to maintain the status quo pending the action of the Commission on the basic charge of discrimination." 480 F.2d at 72.

However, the logic by which the court arrived at this conclusion is hardly persuasive.

> "The basic question . . . is whether, when Congress enacted the 1972 amendments to the statute which

for the first time gave the EEOC the right to file suit both for the enforcement of the rights of the employee and also to seek temporary relief in a hardship case, it made such provision the exclusive means by which a person in Ms. Drew's position could be protected from irreparable damage to herself.

> "We conclude that . . . the individual employee may bring her own suit . . . .

> "Our reasoning derives from the fact that, prior to the 1972 amendment, it is clear that a victim of such forbidden conduct as was here alleged had a clear right to seek equitable relief without having to await the convenience of the EEOC. The 1964 Act gave no power to the EEOC to bring such an action. However, the right to be free from such discriminatory conduct was expressly spelled out in the Act. Thus, the court would have jurisdiction to fashion an equitable remedy to vindicate the right. See e. g., Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970).

> "The situation in which Ms. Drew found herself would have been equated to that of Ms. Sanders in the *Dobbs* case." 480 F.2d at 72–73.

■ The obvious flaw in this analysis is that neither Ms. Drew nor Ms. Troy are at all in the position of Ms. Sanders. Sanders, a black, sued under 42 U.S.C. § 1981. That statute is directed exclusively at discrimination based on race or alienage, and has no application in cases of sex-based discrimination. *See e. g.,* League of Academic Women v. Regents of University of California, 343 F.Supp. 636, 638–640 (N.D.Cal.1972). Drew, a white, sued under Title VII, alleging only sex discrimination. The plaintiff here is also white and therefore has no cause of action under § 1981, despite her attempt to assert one in the supplemental complaint. This was admitted by her attorney during oral argument. She, like Drew, has a claim for sex discrimination arising only under Title VII.

The distinction between a Title VII claim and a claim bottomed on the Civil Rights Act of 1866 is significant. A claimant under the latter is not burdened with the procedural prerequisites of Title VII. Although the kinds of discrimination covered by the two statutes overlap to some extent, the courts have nevertheless refused to hold that the older statute was preempted by Title VII. The remedies they create are independent and unaffected by the other's existence. *See* Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413–417, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Johnson v. City of Cincinnati, 450 F.2d 796, 797–798 (6th Cir. 1971); Brady v. Bristol-Meyers, Inc., 459 F.2d 621, 622 (8th Cir. 1972); Young v. International Tel. & Tel. Co., 438 F.2d 757, 758–760 (3d Cir. 1971); Sanders v. Dobbs Houses, Inc., 431 F.2d 1097, 1099–1100 (5th Cir. 1970), cert. denied, 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231 (1971). Thus, when discrimination of the type covered by both statutes is involved, relief may be available under § 1981 et seq. which is not available under Title VII because of a failure to exhaust administrative remedies. *See, e. g.,* Sanders v. Dobbs Houses, Inc., *supra*; Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011 (5th Cir. 1971). But where, as here, the plaintiff can assert no claim under a procedurally unencumbered statute, the readier availability of preliminary relief thereunder is obviously irrelevant.

█ *Drew* is more easily explained by the inadequacy of subsection (f)(2), which authorized the Commission to seek temporary or preliminary relief pending final disposition of the charge before the EEOC. To obtain relief under this provision requires that the litigant be "fortunate enough . . . to divert the attention of the staff from its overwhelming burden of cases to distinguish it as one which demand[s] immediate attention . . . ." 480 F.2d at 74. The *Drew* court apparently parlayed these difficulties in moving the Commission to act with the necessary alacrity, and the policy which it found in the legislation "to encourage the use of privately employed counsel as private attorneys-general to aid in the enforcement of this statute", into an authorization for private parties to do what Congress had in subsection (f)(2) given exclusively to the Commission (or in certain cases the Attorney General) to do.

It was this obvious extension of Title VII by judicial action that apparently prompted the Sixth Circuit Court of Appeals, in Jerome v. Viviano Food Co., 489 F.2d 965, 966 (6th Cir. 1974), to criticize the appellant there, who was "seeking by case law decision [*i. e. Drew,* upon which the appellant relied heavily] to obviate the statutorily required cooling off and conciliation period set forth in the Equal Employment Opportunity Act". After citing Love v. Pullman Co. and Goodman v. City Products Corp., *supra,* for the proposition that exhaustion of administrative remedies is a precondition to suit under Title VII, the court was content to distinguish *Drew* on the facts, holding that *Jerome* had not demonstrated irreparable harm and therefore an injunction was not available, even if the court had jurisdiction to issue one (an issue on which the court expressed no clear opinion). Nonetheless, the court's wariness of the judicial activism demonstrated by the *Drew* court is clear and, in my opinion, convincing on the issue of how far its lead will be followed in this circuit.

This is not to say that the result in *Drew* and *Bowe* is intrinsically objectionable. To the contrary, the statutory scheme of enforcement would be strengthened and the rights of persons aggrieved better protected if private litigants were authorized to seek preliminary injunctions pending action by the Commission. Arguments in favor of such a provision, however, are more properly addressed to Congress than to the courts. The present provisions for relief, although "inadequate" in the sense that they do not function with optimal efficiency in all circumstances, are not so deficient as to make an ade-

quate remedy for the wrong here asserted totally "speculative", as in Township of Hillsborough v. Cromwell, 326 U.S. 620, 625, 66 S.Ct. 445, 90 L.Ed. 358 (1946), nor has the plaintiff already been subjected to a "long-continued and unreasonable delay" by the administrative agency, as in Smith v. Illinois Bell Tel. Co., 270 U.S. 587, 591, 46 S.Ct. 408, 70 L.Ed. 747 (1926). Absent such egregious deficiencies in the statutory scheme or in the agency's performance of its duties, the court has no implied jurisdiction to circumvent the statutory procedures based on the inadequacy of the prescribed remedy.

Finally, the concept of partial jurisdiction employed by both the *Bowe* and *Drew* courts is unsound. Lacking jurisdiction over the underlying cause of action, the court is without authority to provide relief of any sort. Although both courts recognized that they would not have jurisdiction to determine the claim of discrimination on the merits in a final judgment, both felt justified in acting for the limited purpose of providing preliminary injunctive relief. The sounder position is that taken by another panel of the Fifth Circuit in Fort Worth Nat'l Corp. v. Federal Savings & Loan Ins. Corp., 469 F.2d 47, 54 (5th Cir. 1972):

> "Furthermore, we also disagree with the holding of the district court that although the Court of Appeals had exclusive jurisdiction over the merits of the dispute, the district court could nevertheless assume jurisdiction 'solely for the purpose of maintaining the status quo and preventing irreparable injury.' No such concept of partial jurisdiction has ever been recognized by this Court. Unless it has jurisdiction over the underlying cause of action, a court may not purport to issue preliminary relief in the case. Sires v. State of Washington, 1963, 9 Cir., 314 F.2d 883. Since the district court had no jurisdiction over the subject matter of the case, it was equally without authority to issue a preliminary injunction."

Because the statutory prerequisites for court action under Title VII have not been met, this court has no jurisdiction over plaintiff's claim, and therefore no power to grant any relief based thereon. The request for a preliminary injunction is accordingly denied and the complaint dismissed without prejudice to its reinstatement upon compliance with the statute.