**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., Plaintiff(s),**

v.

**PATRICK HENRY EDUCATION ASSOCIATION, et al., Defendant(s).**

**No. C 88–7801.**

United States District Court, N.D. Ohio, W.D.

March 13, 1990.

---

**672**

Charles E. Guerrier, EEOC, Cleveland, Ohio, Bruce N. Cameron, Nat. Right to Work Legal Defense Foundation, Springfield, Va., R. Timothy Bauer, Toledo, Ohio, for plaintiffs.

Ted Iorio, Christine A. Reardon, Gallon, Kalniz & Iorio, Toledo, Ohio, Joseph N. Rosenthal, Asst. Atty. Gen., Columbus, Ohio, for defendants.

## OPINION AND ORDER

WALINSKI, Senior District Judge.

This cause is before the Court on cross motions of plaintiffs, Equal Employment Opportunity Commission ("EEOC"), Larry A. Dirr ("Dirr"), and defendant, Patrick Henry Education Association, et al., ("PHEA"), for summary judgment, the opposition and replies thereto. Jurisdiction is based upon 42 U.S.C. § 2000e. For the following reasons defendant's motion is

well taken and the same is granted. Consequently, plaintiffs' motions are denied.

## FACTS

The case at bar is an action filed pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). The plaintiff, EEOC, filed the complaint giving rise to this action on behalf of Dirr and Wilbur Smith Jr. Thereafter, Dirr intervened as plaintiff. The Patrick Henry Local School District Board of Education and the State Employment Relations Board were named as Rule 19 parties, pursuant to Rule 19 of the Federal Rules of Civil Procedure. This Court, in an order dated March 6, 1989, dismissed the State Employment Relations Board.

PHEA is an organization[1] which represents the employees of the Patrick Henry Local School District Board of Education, ("Board of Education"), for the purposes of collective bargaining. The PHEA represents all teachers in the bargaining unit, and in association with the Board of Education, is signatory to a collective bargaining agreement setting forth the conditions of employment. Specifically, the effective agreement provides that association fees are automatically deducted from an employees pay.

The Ohio Education Association ("OEA"), handles all claims for religious exemptions by members of an OEA-affiliated bargaining unit. Pursuant to a democratic process, the OEA chose to adopt a policy regarding religious exemptions consistent with the statutory mechanism found in ORC § 4117.09(C). In addition, the OEA maintains rebate procedure, whereby employees who choose not to belong to the local association, and who object to the political and ideological expenditures of the local association or its affiliates, may obtain a rebate of the portion of their fair share fee utilized for such purposes.

In the fall of 1985 both Dirr and Smith had portions of their pay deducted in accordance with the bargaining agreement.

---

1. The PHEA is an employee organization within the definition set forth in Ohio Revised Code § 4117.09(D), and is an exclusive representative within the meaning of Ohio Revised Code § 4117.01(E).

As a result, both sent letters of opposition to the Board of Education. Thereafter, the Board placed the amounts deducted into an account, pending resolution of the present dispute.

Neither Dirr nor Smith propose that they have a religious objection to the collective bargaining activities of the PHEA, nor do they object to labor organizations in general. Further, both plaintiffs have stated they would have no objection to membership in the PHEA only; however, neither has invoked the fair share fee rebate procedure maintained by the OEA. Instead, plaintiffs propose to make a contribution to a charity of their choice, in lieu of contributing their representation fees.[2] In the alternative, Dirr has suggested that he be excused from the bargaining unit, and be allowed to negotiate individually with the Board.[3]

Specifically, both plaintiffs object to various positions and activities that the PHEA's state affiliates allegedly promote. As a result, plaintiffs filed charges of discrimination with the Ohio Civil Rights Commission and the Equal Opportunity Commission. The OCRC issued a finding of no probable cause and denied Dirr's request for reconsideration. Thereafter, Dirr filed charges with the EEOC. These charges resulted in a finding of probable cause and the present matter was filed by the EEOC in an attempt to enforce its findings. Plaintiffs claim that the union violated their constitutional and Title VII rights by not allowing them to be excused from the collective bargaining agreement and forward their fees to a charity of their choice. Plaintiffs, further claim, that O.R.C. § 4117.09(C) is unconstitutional in that it requires membership in a specific church which opposed affiliation with labor organizations.

Defendant, on the other hand, proposes that plaintiffs religious objections have been reasonably accommodated pursuant to the rebate procedure maintained by the OEA. Defendant, in the alternative, states that plaintiffs have failed to prove a prima facia case of religious discrimination in that no adverse action has been taken against plaintiffs as a result of their religious convictions. Also, defendants allege that plaintiffs must reasonably accommodate the employer and that here plaintiffs proposals would have an unduly harsh effect on the employer. Last, defendants assert that acceptance of plaintiffs suggestions is not the only avenue of accommodation, rather any reasonable attempt at accommodation must be accepted by the plaintiffs.

## DISCUSSION

Rule 56, Fed.R.Civ.P., directs the disposition of a motion for summary judgment. In relevant part Rule 56(c) states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

■ The Court's function in ruling on a motion for summary judgment is to determine if any genuine issue exists for trial, not to resolve any factual issues, and to deny summary judgment if material facts are in dispute. *United States v. Articles of Device*, 527 F.2d 1008, 1011 (6th Cir. 1976); *Tee–Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193, 1195 (6th Cir.1974). Further, "[i]n ruling on a motion for summary judgment, the evidence must be viewed in a light most favorable to the party opposing the motion." *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir.1983). To summarize, summary judgment is only appropriate when no genuine issue of material fact remains to be decided, and when the undisputed facts, viewed in a light most favorable to the non-moving party, entitle the movant to judgment as a matter of law. *Smith v.*

---

**2.** This is an option that OEA permits only if the statutory prerequisites set forth in ORC § 4117.09(C) are met.

**3.** This Court finds that the obvious time and costs that this accommodation would generate renders it unacceptable. Therefore, it will not be further addressed in the text of this decision.

*Pan Am World Airways,* 706 F.2d 771, 773 (6th Cir.1983).

■ A principle purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Rule 56(e) places responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does not permit such a decision. In relevant part the provision states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Rule 56(e), Fed.R.Civ.P. Rule 56(e) requires the non-moving party to go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553.

Section 703(a)(1) of the Civil Rights Act of 1964, Title VII, makes it unlawful to "discharge ..., or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (1982). Section 701(j) of the Act states:

> The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employees' religious observance or practice without undue hardship on the conduct of the employer's business.

■ In order to prove a prima facie case of religious discrimination plaintiff must prove: (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) and he or she was disciplined for failure to comply with the conflicting employment requirement. *Turpen v. Missouri–Kansas–Texas Railroad Co.,* 736 F.2d 1022, 1026 (5th Cir.1984). Further, a determination of probable cause by the EEOC, though not dispositive, is admissable as evidence to help show a prima facie case. *Philbrook v. Ansonia Board of Education,* 757 F.2d 476 (2nd Cir.1985). Once the plaintiff has proven a prima facie case, the burden shifts to the employer to forward evidence establishing that it cannot sensibly accommodate the employee without incurring undue hardship. *Protos v. Volkswagen of America, Inc.,* 797 F.2d 129, 134 (3rd Cir. 1986).

■ Plaintiffs allege that they have met their burden of proof with respect to establishing a prima facie case. Defendants, however, claim that plaintiffs have failed to successfully institute both the first and third elements of a prima facie case.[4] Specifically, defendants assert that since neither plaintiff has been discharged nor threatened with discharge the last prong of a prima facie case has not been fulfilled. Although some courts have held that discharge is required to prove a prima facie case, we believe the better view was iterated in *Philbrook.* The court there held that discharge was not required to make a prima facie showing, that Title VII also prohibits discrimination in regards to compensation, terms, conditions, and privileges of employment. *Philbrook,* at 483.

Plaintiffs assert the case of *Tooley v. Martin–Marietta Corp.,* 476 F.Supp. 1027 (D.Or.1979) to support their proposition that no disciplinary act is necessary to prove a prima facie case. Their reliance on

---

4. Defendants contest that plaintiffs have a bona fide religious belief. Nonetheless, this Court does not need to address the sincerity of plaintiffs' religious convictions since other issues are dispositive.

*Tooley,* however, is misplaced. In *Tooley,* the union had a policy in which an employee that didn't pay their dues was terminated. The union consequently sought to have the employee terminated for failure to pay. Neither is the case here. The PHEA has not attempted to have plaintiffs terminated, nor is there any written policy that obligates the employer to discharge plaintiffs for failure to pay their dues.

Although this Court agrees that the "facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations," *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), after careful examination of the facts in the present case, we do not believe plaintiffs have met the their burden. Plaintiffs have not been discharged, threatened with discharge, nor suffered any loss of privilege in regards to employment. Union dues were deducted from their paychecks, as it is from all employees. Therefore, they have not been the subject of any discipline for failure to comply with conflicting employment requirements.

■ In the alternative, this Court believes that plaintiffs proposals would lead defendants to encounter undue hardship. Where the employer and the employee both offer a reasonable accommodation, Title VII requires the employer to adopt the proposal the employee prefers unless that accommodation presents undue hardship for the employer's conduct of business. *Philbrook,* at 484. Furthermore, where the religious discrimination cultivates out of a collective bargaining agreement, the employer and the union are under the same duty to accommodate, and the court should also consider hardship to the union as well as the employer, *Cooper v. General Dynamics Convair Aerospace Division,* 533 F.2d 163, 171 (5th Cir.1976). Thus, the central issue here is whether accepting either of plaintiffs' proposed accommodations would cause the EEOC undue hardship.

Plaintiffs claim that paying union fees to a charity is an accommodation which the courts have repeatedly approved. Plaintiffs rely on such cases as *McDaniel v. Essex,* 696 F.2d 34, 38 (6th Cir.1982) and *Tooley v. Martin–Marietta, supra.* These cases, however, are distinguishable from the case *sub judice.* In the aforementioned cases, the employees held a religious objection to the fundamental labor union concept. Specifically, the employees in those cases could not join nor contribute to any movement whose purpose was nonreligious. Here, on the other hand, Dirr and Smith do not object to labor unions in general, but, object to the activities of the union. If plaintiffs object to unions as such, they have an accommodation available to them which would allow the charity substitution accommodation. But that is not the case here. Furthermore, the Supreme Court has held that reasonable accommodation did not compel an employee to abrogate a collective bargaining agreement in order to enable an employee to satisfy religious observances, *Trans World Airlines v. Hardison,* 432 U.S. 63, 81, 97 S.Ct. 2264, 2275, 53 L.Ed.2d 113 (1977).

Defendants rely heavily upon *E.E.O.C. v. University of Detroit,* 701 F.Supp. 1326 (E.D.Mich.1988), to support its claim of undue hardship. The facts of that case are closely aligned with the case at bar. In addition, this Court finds the reasoning of the Michigan district court sound, based on current case and statutory law. There, a faculty member was discharged for failing to pay union dues. The plaintiff, in that case, alleged that his religious beliefs forbade him from contributing to an organization which supported such issues as pro-abortion. As an alternative, he offered to satisfy his union contribution by substituting a charitable contribution of his choice.

The court, citing *Hardison,* stated that undue hardship can only be assessed after considering "the likelihood that ... many employees" would seek the benefit granted in the litigated instance, *Hardison,* 432

U.S. at 84, 97 S.Ct. at 2277.[5] Moreover, we agree that "it would be shortsighted for this Court to decide the question of undue hardship without considering the likelihood that other [PHEA] bargaining unit members would follow in [Dirr's] footsteps ..." *E.E.O.C.* at 1343. The court went on to discern that no principal distinction existed between that employee's objections and many other members objections to the union's public positions with regards to corporal punishment, sex education, and the like. *Id.* In addition, the court noted that an exemption for the plaintiff would require the other members of the bargaining unit to make up the subtracted dues. Those considerations coupled with the threat of a widespread refusal to pay union fees and the effect on the union's free speech rights,[6] lead the court to conclude that plaintiff's proposed accommodation would create undue hardship for the union.

The plaintiffs, in the present case, attempt to distinguish *E.E.O.C.* by claiming that there exists a difference of beliefs. Particularly, plaintiffs assert that the commandments of their religion state that they may not provide support or solace of any kind to an organization who would violate God's commandments. However, this essentially means that due to the union's alleged "ungodly" positions, plaintiffs cannot support it, and that is the same basic argument as the employee in *E.E.O.C.* forwarded. Therefore, the rational of *E.E.O.C.* applies in the present case, where the plaintiffs do not object to the union's collective bargaining functions, but to its ideological positions. Furthermore, the union in the present case, has nearly seven hundred locals. A policy requiring the union

to allow "charity substitution," absent impartial determination, will be fraught with the potential for disparate treatment of individuals with similar beliefs. As such, we find that plaintiffs proposal would induce undue hardship upon the union.

■ In the alternative, the defendants argue that an employer's accommodation obligation is limited to offering the employee a reasonable accommodation, not necessarily the employee's choice. Moreover, the defendants contend that once the employer provides reasonable accommodation, he need not show that the employees proposal would invoke undue hardship. In a recent Supreme Court case Justice Rehnquist wrote:

> [W]here the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end ... In enacting § 701(j), Congress was understandably motivated by a desire to assure the individual additional opportunity to observe religious practices, but it did not impose a duty on the employer to accommodate at all costs ... [otherwise] the employee is given every incentive to hold out for the most beneficial accommodation, despite the fact that an employer offers a reasonable resolution of the conflict.

*Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 67, 69, 70, 107 S.Ct. 367, 371, 372, 373, 93 L.Ed.2d 305. Consistent with the Supreme Court's findings, therefore, this Court need only find that defendants' proposed accommodations are reasonable. We so find. Defendants have offered plaintiffs two options. The first option is complete exemption from union

**5.** Compare *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1086 (6th Cir.1987) (evidence of undue hardship must be more than mere speculation), with *Draper v. United States Pipe and Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975) (undue hardship may be established without actually putting an accommodation into effect).

**6.** *See, Machinists v. Street*, 367 U.S. 740, 773, 81 S.Ct. 1784, 1802, 6 L.Ed.2d 1141 (1960) ("the [union] majority ... has an interest in stating its views without being silenced by the dissenters"). *See also, Abood v. Detroit Board of Education*, 431 U.S. 209, 222, 97 S.Ct. 1782, 1793, 52

L.Ed.2d 261 (1976) ("To be required to help finance the union as a collective-bargaining agent might well be thought, therefore, to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit. But the judgment clearly made in [*Railway Employes' Dept. v.*] *Hanson* [351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956)] and *Street* is that such interference as exists is constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by congress."

dues if they can meet the requirements of § 4117.09(C). The second option is a rebate of fees proportionate to the unions expenditures used in pursuing objectional stands.[7] In other words, plaintiffs would only be required to contribute fees for purely collective bargaining related expenses. The fair share rebate procedure is reasonable as a matter of law. *Ansonia Board of Education*, at 69, 107 S.Ct. at 371; *E.E.O.C.* at 1340. Consequently, we hold that defendant union has complied with its statutory obligation under Title VII.[8]

In summary, this Court finds that plaintiffs have not been discriminated against on the basis of religion. Plaintiffs have failed to prove a prima facie case. In the alternative, plaintiffs' suggested accommodation would work undue hardship upon the union. Last, defendants have met their duty under Title VII by offering plaintiffs reasonable accommodations.[9]

It is therefore,

ORDERED that plaintiffs' motions for summary judgment are hereby denied.

FURTHER ORDERED that defendant's motion for summary judgment is granted and this case is accordingly dismissed with prejudice.

---

7. Plaintiffs contend that the rebate procedure has been declared unconstitutional in the past. *See, Lowary v. Lexington Local Bd. of Ed.,* 704 F.Supp. 1430 (N.D.Ohio 1987). However, recently the procedure was altered to comply with the constitutional requirements. Plaintiffs, nonetheless urge the court to focus on the system of the past, instead of the one in place today. The issue is whether or not the defendants are offering plaintiffs reasonable accommodation today, not in the past. Therefore, plaintiffs' argument is not well taken.

8. Plaintiffs contend that they are being required to exhaust state remedies before they may assert their Title VII remedies. They are mistaken. Plaintiffs' Title VII claim is properly before this Court. The state remedies are merely evidence of defendants' reasonable accommodations and *thus* relate to defendants' statutory duty under Title VII, the two are interrelated in the case at bar.

9. Plaintiffs also assert that O.R.C. § 4117.09(C) is unconstitutional. We will not address that issue at this time. It is unnecessary given that plaintiffs were afforded alternative accommodations.